GARY NEHUS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nehus v. Commissioner
Docket No. 16199-92
United States Tax Court
T.C. Memo 1994-631; 1994 Tax Ct. Memo LEXIS 645; 68 T.C.M. (CCH) 1503; December 21, 1994, Filed *645 Decision will be entered under Rule 155. Gary Nehus, pro se. For respondent: Linette Angelastro. NAMEROFF
NAMEROFF
MEMORANDUM OPINION NAMEROFF, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1] Respondent determined a deficiency in petitioner's 1989 Federal income tax in the amount of $ 4,554, plus an addition to tax in the amount of $ 683.10 under section 6651(a)(1) and a penalty in the amount of $ 910.80 under section 6662(a). After concessions by the parties, the issues for decision are: (1) Whether petitioner had unreported income in the amount of $ 1,065; (2) whether petitioner is entitled to a deduction for medical expenses in excess of the amount allowed by respondent; (3) whether petitioner is entitled to certain claimed Schedule A miscellaneous expense deductions; and *646 (4) whether petitioner is liable for the penalty under section 6662(a). [2]
Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time of the filing of the petition herein, petitioner resided in Los Angeles, California. Petitioner bears the burden of proving respondent's determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioner has a bachelor of science degree in accounting from Woodbury University and a master's degree *647 in business administration from Pepperdine University. Following his graduation from Woodbury University in 1967, petitioner has been employed at various times as either an auditor, accountant, or controller. Petitioner has been unemployed since 1987. Preliminary Matters
The Court left the record open for 45 days following the trial so as to enable petitioner to submit specific documents: (1) Dean Witter monthly statements for the 1989 taxable year; (2) copies of doctor bills which might support petitioner's claimed deduction for medical parking expenses; and (3) litigation documents, such as complaints filed with the respective courts and/or judgments rendered, which might support petitioner's claimed deductions for litigation expenses. On December 10, 1993, petitioner filed a motion to supplement the record with the Court and respondent filed a notice of objection thereto. Petitioner's motion to supplement the record proposed to add to the record statements of fact which are testimonial in nature, legal argument, schedules prepared by petitioner, copies of documents which petitioner already attempted to admit into evidence at trial, and documents which are either dated *648 subsequent to the year in issue or not of the type for which the record was left open. However, petitioner's motion also proposed to include in the record: (1) A copy of a document entitled "Investment Account Statement -- Dean Witter U.S. Government Securities Trust" dated December 29, 1989 (marked by petitioner as exhibit 1); (2) a series of documents relating to a dispute between petitioner and Dean Witter (marked by petitioner as exhibits 8-1, 8-15, 8-16, 8-17, and 8-19); (3) a series of exhibits pertaining to a legal action between petitioner and Terry Ridgeway/Kirk Grossman for breach of contract (marked by petitioner as exhibits 8-20, 8-21, and 8-26); (4) a copy of a cancelled check dated March 10, 1989, payable to the American Arbitration Association (marked by petitioner as exhibits 8-22 and 8-23); and (5) a copy of a complaint for employee benefits dated November 14, 1989 (marked by petitioner as exhibit 8-29). We believe these documents fit within the parameters of the Court's order keeping the record open. Accordingly, to that extent, petitioner's motion will be granted and the above-described documents will be admitted into evidence as petitioner's exhibits 40 through *649 44, respectively. However, petitioner's motion with respect to the statements, arguments, other documents, and schedules will be denied. Unreported Income
Respondent determined that petitioner failed to report income from his investments with Dean Witter and Smith Barney in the respective amounts of $ 746 and $ 319. [3] Petitioner initially contended that these amounts were already reported on his tax return. In his motion to supplement the record and on brief, he now contends that the Dean Witter amount represents nontaxable return of capital. Petitioner's exhibit 40, a document entitled "Investment Account Statement -- Dean Witter U.S. Government Securities Trust" is a summary of the 1989 activity in petitioner's U.S. Government Securities account. In addition to reflecting "gross dividends and other distributions" of $ 1,784.55 (for which a Form 1099-DIV *650 was issued and which amount was reported by petitioner) the exhibit indicates that on May 25, 1989, petitioner received $ 746 as the result of a redemption of 79.038 shares. Exhibit 40 also provides: "Please note, this statement is also our form 1099-B for tax reporting purposes if you redeemed or exchanged shares during 1989". There is no evidence in this record to indicate that such receipt was nontaxable in nature, and petitioner has failed to offer any evidence with respect to his basis, if any, in the shares redeemed. As an accountant, petitioner should be well aware that a taxpayer is responsible to prove cost basis. Accordingly, it is clear and we find that petitioner did receive $ 746 in addition to the $ 1,784.55, the receipt of which was from the redemption of shares, and such amount is includable in petitioner's gross income as taxable capital gain. [4]
With respect to the Smith Barney income, *651 the record contains a copy of a Smith Barney client statement dated December 29, 1989, which indicates that petitioner received cash/portfolio dividends "year to date" in the amount of $ 319.21, in addition to bond interest of $ 7,786. Petitioner reported on his Schedule B interest income from Smith Barney of $ 6,119, an amount calculated in a schedule attached to the return which is based upon "interest 'accrued' per Smith Barny [sic]" of $ 7,898. Respondent has not challenged petitioner's computation nor do we have an explanation of the inconsistency between $ 7,786 and $ 7,898, but these facts do not appear to have any bearing on the dividend question. Petitioner has offered no evidence which supports his contention that he already reported the $ 319.21 on his 1989 tax return. Accordingly, we find that petitioner had unreported income in the amount of $ 319.21 from Smith Barney. Medical Expenses
Petitioner claimed medical expenses on his 1989 Schedule A in the amount of $ 14,160. In the notice of deficiency, respondent allowed petitioner medical expenses in the amount of $ 9,252. The following is a schedule of the expenses claimed by petitioner and the amounts allowed *652 by respondent (prior to the reduction of 7.5 percent of adjusted gross income): Expense
Claimed
Allowed
Prescription medicine, insurance
$  7,951
$ 7,951
Mileage
1,783
635
Parking
1,666
666
Hypoglycemic diet
2,760
-0-
Total
14,160
9,252
Petitioner has conceded the disallowed mileage expense. However, he now contends that he is entitled to a deduction in the amount of $ 6,918 for his hypoglycemic diet, rather than the $ 2,760 originally claimed on his return. 1. Parking
Petitioner claimed medical parking expenses on his return in the amount of $ 1,666. Respondent, in the notice of deficiency, allowed petitioner a deduction in the amount of $ 666 for medical parking. Petitioner's evidence consists of his testimony, numerous receipts from various parking garages, and a summary schedule. The summary schedule reflects that many of the claims for parking arise out of visits to various pharmacies (for which $ 3.00 or $ 5.00 is claimed), notwithstanding the Court's belief that most of the identified pharmacies are located in shopping centers which do not charge for parking. Moreover, the summary lists parking expense for numerous trips to various doctors *653 of $ 15 for each visit, a coincidence we find hard to accept. Moreover, incredibly, there are several instances where one parking receipt (e.g., for $ 45) is shown on the summary as pertaining to 3 different visits on 3 different days. It is clear to the Court that the summary was not prepared contemporaneously with the occurrence of the events depicted, as often there are dates out of sequence. In short, we find petitioner's evidence to be particularly lacking in trustworthiness and credibility. Moreover, following the trial, the record was left open for the submission of copies of petitioner's doctors bills, indicating office visits which would purportedly tie into the parking receipts presented. Although such records should have been readily available to petitioner, he failed to present such documents, contending that he did not receive any, as his insurance handled the doctors' bills. Petitioner's summary, which lists payments to doctors, refutes this contention, and petitioner, nevertheless, should have been able to obtain this information from his doctors. Accordingly, we hold that petitioner has not proven that he is entitled to a deduction for medical parking in excess *654 of that allowed by respondent. 2. Special Diet
Petitioner claimed $ 2,760 on his return for expenses incurred with respect to a special diet for his alleged hypoglycemic condition. At trial, petitioner contended he also suffered from a severe allergy to monodyglycerides, additives that are found in many foods, and that he was required to purchase foods that did not contain these additives. Thus, petitioner contended that he actually incurred $ 6,918 for his special diet, which amount, according to petitioner, is based upon 40 percent of his entire alleged food expenses of $ 17,294. [5] Respondent contends that all amounts spent by petitioner for his diet were personal, nondeductible expenses under section 262.
*655 Section 213 allows a deduction for expenses, not compensated for by insurance or otherwise, for medical care. An expenditure for medical care is narrowly defined as an expense incurred primarily for the prevention or alleviation of a physical or mental defect or illness, and not an expense which is merely beneficial to the general health of an individual. Sec. 1.213-1(e)(1)(ii), Income Tax Regs. Consistent with this definition, we have held that the cost of special foods or beverages taken as a substitute for foods or beverages normally consumed by a person to satisfy his regular nutritional requirements is a personal expense which is not deductible. However, where the special foods or beverages are prescribed by a physician for medicinal purposes, in addition to the normal diet of a patient, the cost may qualify as a medical expense. Harris v. Commissioner, 46 T.C. 672, 673 (1966); Crawford v. Commissioner, T.C. Memo. 1993-192. Petitioner argues that Randolph v. Commissioner, 67 T.C. 481 (1976), and Von Kalb v. Commissioner, T.C. Memo. 1978-366 are applicable *656 to the instant case. In those cases we held that the taxpayers were entitled to deduct additional expenses incurred in adhering to a prescribed diet to combat severe allergic reactions to chemically treated or packaged foods and hypoglycemia, respectively. We considered "additional expenses" to be expenses in addition to those the taxpayers normally spent on their normal nutritional needs. Accordingly, petitioner has the burden to prove: 1) That he has a specific medical condition which requires expenditures for food and beverage of amounts in excess of those of a normal diet; and 2) the actual amounts of such excess. Petitioner has failed on both accounts. Petitioner testified that he is hypoglycemic and allergic to monodyglycerides, and, is, therefore, required to eat six high-protein monodyglyceride-free meals a day. However, other than petitioner's self-serving testimony, there is not a scintilla of medical evidence of petitioner's condition or that the special foods were needed to alleviate it. In Cohn v. Commissioner, 38 T.C. 387 (1962), and Randolph v. Commissioner, supra, the Court was provided with detailed *657 evidence as to the nature of the medical condition and the relation of the prescribed treatment. Petitioner could have had a doctor testify as to his medical condition and the necessary treatment. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1164-1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Instead, petitioner offered a copy of a piece of paper from a physician's prescription pad on which someone printed "Gary Nehus is allergic to diglycerides and needs special foods. He also has hypoglycemia". The document is dated July 30, 1992, and is signed, with what appears to be a different pen, by someone whose name cannot be identified. The document is clearly inadmissable hearsay and respondent's objection was sustained. In his post-trial motion to supplement the record, petitioner again submitted the prescription form as well as a 1978 letter from a Harvey M. Ross, M.D. and a 1993 letter from a Gary S. Rachelefsky, M.D., relevant to a 1993 visit by petitioner. As indicated above, we will deny petitioner's motion as to these documents; they are inadmissable hearsay. Moreover, in Cohn, Randolph *658 , and Von Kalb, the taxpayers provided us with some evidence as to the relative costs of the special and ordinary foods so that we were able to approximate the excess costs. We have no such evidence here. A substantial portion of petitioner's claimed food costs were incurred in various restaurants in and around southern California. As best we can tell from the record, petitioner ordered his meals from a regular menu and did not show, as required for the deduction, that he thereby incurred added charges for specially prepared food. [6]Rybak v. Commissioner, T.C. Memo. 1980-257. Moreover, the restaurant bills and receipts in the record reflect that petitioner's claimed expenses include costs for alcoholic beverages, tips, and expenses of others. On more than one occasion, petitioner's summary would list as two separate items the restaurant check and the credit card receipt for the same meal. *659 As for petitioner's alleged grocery expenses, petitioner's deduction is primarily based upon the total of checks made payable to various supermarkets or to cash. The amount of each check was generally written in excess of the actual amount expended on groceries (petitioner would write the checks in a higher amount than his actual grocery purchase and would receive the difference back in cash). One of the supermarkets, Lucky's, apparently had the routine of indicating on the check an amount, which in the Court's opinion, reflected the actual amount of the purchase. Thus, of the total amount of 23 checks written to Lucky's ($ 2,810), the total of the amounts believed to be the actual purchases was only $ 546.44. Moreover, some grocery bills in evidence reflect that they included the cost of non-food items or cat food for petitioner's pet, nor does it appear that petitioner purchased special, higher-cost foods. Accordingly, for the foregoing reasons, we sustain respondent's determination on this issue. Schedule A Expenses[7]
*660 Petitioner claimed Schedule A miscellaneous deductions in the amount of $ 18,134, consisting of $ 5,500 for job-hunting expenses, $ 1,012 for dues and subscriptions, $ 2,722 for continuing professional education, $ 4,453 for attorney fees, and $ 4,447 for home office expense. In the notice of deficiency, respondent disallowed the entire amount of Schedule A miscellaneous deductions claimed by petitioner on the grounds that the expenses were not substantiated, and, even if substantiated, did not constitute ordinary and necessary business expenses. Additionally, at trial, petitioner contended that he actually incurred job hunting, dues and subscription expenses in the respective increased amounts of $ 6,643 and $ 1,885, rather than the amounts claimed on his return. We must determine whether petitioner properly claimed Schedule A miscellaneous deductions. Deductions are strictly a matter of legislative grace, and petitioner bears the burden of proving that he is entitled to any deductions claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). If certain claimed deductions are not adequately substantiated, we may be permitted *661 to estimate them when we are convinced from the record that the taxpayer has incurred such expenses and we have a basis upon which to make an estimate. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). 1. Job-Hunting Expenses
Petitioner claims that he incurred job-hunting expenses in the amount of $ 6,643 during 1989. Petitioner testified that during 1989 he obtained a list of companies to which he sent cover letters and copies of his resumes. Petitioner testified that he went to numerous interviews. Respondent does not contest the fact that petitioner was looking for a job in 1989. Section 162 permits deduction of all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. This includes expenses paid in seeking employment in the taxpayer's trade or business. See, e.g., Primuth v. Commissioner, 54 T.C. 374 (1970). These expenditures, to the extent substantiation exists, are deductible regardless of whether employment is obtained. Cremona v. Commissioner, 58 T.C. 219 (1972). *662 Although we believe petitioner probably incurred some job-hunting expenses, petitioner has failed to substantiate any of the alleged expenses. Other than petitioner's self-serving testimony, which was vague, the only evidence petitioner presented was a handwritten summary of his job-hunting expenses prepared for trial which lists expenses allegedly incurred for photocopying, postage, supplies, parking, and mileage, and parking receipts on which he had written "job search". [8] This evidence suffers from the same infirmities as described above in relation to the medical parking deduction. We cannot believe that every interview required parking expenditures and that no potential employer had free or validated parking. We find it incredible that, based on the extensive number of interviews which petitioner purportedly had, he had no correspondence that would support his testimony. Based on this record, we cannot determine the amount of job-hunting expenses, if any, incurred by petitioner. Accordingly, we sustain respondent. *663 2. Dues and Subscriptions
Petitioner claimed $ 1,012 for dues and subscriptions on his Schedule A. Respondent disallowed the entire amount claimed by petitioner in the notice of deficiency. At trial, petitioner contended that he actually incurred $ 1,885 for dues and subscriptions, rather than the $ 1,012 originally claimed on his return. A portion of this claimed deduction consists of petitioner's payments for subscriptions to the Los Angeles Times and the Wall Street Journal, newspapers of general circulation. Petitioner has failed to show that these expenditures have the requisite connection to any trade or business of his own. The evidence does include cancelled checks for $ 125 for dues for the California Society of Certified Public Accountants, $ 250 for dues for the California State Board of Accountancy, and $ 20.67 for the Prentice Hall Federal Tax Handbook. We believe these expenses constitute ordinary and necessary business expenses of petitioner's accounting profession. Accordingly, petitioner is entitled to a deduction in the amount of $ 395.67 for dues and subscriptions. 3. Continuing Education
Petitioner claimed $ 2,722 on his Schedule A for continuing *664 professional education. The educational expenses allegedly pertained to a seminar given by the California Society of C.P.A.'s in Kona, Hawaii. The expenses claimed consisted of the cost of the alleged seminar, airfare, hotel accommodations, food, dry cleaning, and various sundry items. Section 1.162-5(a), Income Tax Regs., [9] provides that amounts expended for education of an individual may be deducted as ordinary and necessary business expenses if the education maintains or improves skills required by the individual in his employment or other trade or business, or meets the express requirements of the individual's employer. *665 If an individual travels away from home primarily to obtain education the expenses which are deductible are the expenditures for travel, meals, and lodging while away from home. However, if the individual engages in some personal activity, the portion of the expenses attributable to such personal activity constitutes nondeductible personal or living expenses. Furthermore, if the individual's travel away from home is primarily personal, the individual's expenditures for travel, meals, and lodging (other than the meals and lodging during the time spent participating in deductible educational pursuits) are not deductible. Whether a particular trip is primarily personal or primarily to obtain education depends on the facts and circumstances of each case. However, an important factor to be taken into consideration in making the determination is the relative amount of time devoted to the personal activity as compared with the time devoted to educational pursuits. Sec. 1.162-5(e)(1), Income Tax Regs.
Petitioner failed to present convincing evidence, such as a continuing education credit statement, course enrollment verification, or course materials, which would indicate that he actually *666 attended a seminar while in Hawaii. Although petitioner did present a copy of an unsigned letter allegedly from the California Society of C.P.A.'s dated December 21, 1989, which states "Thank you for your attendance at the recent continueing [sic] education seminar in Hawaii", the hotel bills which petitioner presented indicate that petitioner arrived in Hawaii on December 20, 1989, for the alleged seminar. Thus, it appears odd that petitioner would receive an unsigned letter dated December 21, 1989, thanking him for his attendance at the recent seminar. Petitioner's evidence substantiating his expenditures again consists of a handwritten summary and various receipts for travel, car rental, meals, and other items (including clothes). Oddly enough, there is no expenditure for the seminar, and we seriously doubt whether the seminar was free. Likewise, the record contains no seminar materials, such as a schedule of events, handout materials, etc. Based on this record, petitioner has not proven that the expenses he incurred for his Hawaii trip constituted deductible education expenses, rather than expenses incurred for a vacation. Accordingly, we sustain respondent's determination *667 on this issue. 4. Litigation Expenses
Petitioner claimed litigation expenses in the amount of $ 4,453 on his Schedule A. In the notice of deficiency, respondent disallowed the entire amount claimed by petitioner based on lack of substantiation. As relevant in this case, legal expenses are deductible, if substantiated, as a trade or business expense under section 162(a) or as expenses incurred for the production or collection of income or for the management, conservation, or maintenance of income-producing property under section 212. Legal expenses attributable to obtaining title of property or other capital investment activities are nondeductible, capitalizable expenses. Accordingly, we must first determine the nature and origin of the claim involved in each proceeding. United States v. Gilmore, 372 U.S. 39, 49 (1963). However, section 265(a)(1) provides that no deduction shall be allowed for "Any amount otherwise allowable as a deduction which is allocable to * * * income [which is] wholly exempt from [taxes]." Accordingly, those legal expenses allocable to income that is wholly exempt are nondeductible. Petitioner's substantiation of *668 his legal expenses, except as noted below, again consists of a hodgepodge of receipts for parking, postage, printing, restaurants, and various retail establishments on which occasionally are written the words "law suit." In addition, petitioner prepared a schedule of these receipts, allocating the expenses to the various lawsuits. We do not find these receipts and the schedule persuasive evidence substantiating the claimed expenses. At trial, petitioner testified that during 1989 he was involved in four litigation matters. a. Ridgeway/Grossman. One exhibit reflects that there was an arbitration proceeding with the American Arbitration Association, wherein, on February 10, 1989, petitioner filed a "Counterdemand for Arbitration", alleging the following under the heading "Nature of Dispute": Breach of contract: $ 5,000. Loss of profits, loss of rents, loss of fair market value of rents from Ridgeway, breach of written contracts with Ridgeway to provide partnership documents and theft, failure to provide General Accident insurance rebate to G. Nehus and theft per agreement, loss of profits and rents, failure to pay note receivable due Nehus by Ridgeway.
In connection *669 with this proceeding, petitioner paid the arbitration association $ 300 in 1989. The record also contains a letter from the arbitration association dated October 1, 1990, transmitting a copy of the arbitrator's award, but the record does not contain a copy of said enclosure. We are not able to determine the exact nature of this proceeding from the above quotation. Petitioner testified that it was some sort of title dispute. Accordingly, we are unable to allow any portion of the $ 300, the only amount adequately substantiated. b. Dean Witter dispute. As best we can tell from this limited record, petitioner brought some sort of action against Dean Witter and one Ronald Rand for lost profits arising out of one or more securities transactions occurring in 1984. The proceeding appears to have been an arbitration proceeding conducted in conjunction with the American Stock Exchange. The record contains one or more pages of a document entitled "Revised Complaint Amounts due Gary Nehus", but it is unclear whether such document was ever filed, as it bears no filing stamps nor signatures. However, petitioner has not substantiated any expenditures attributable to this proceeding. c. *670 Savin. On November 14, 1989, petitioner filed a complaint in the United States District Court for the Central District of California naming several Savin Corporation Employee Benefit Plans among the defendants. Without going into great detail, it appears that the gist of the complaint is that petitioner was a former employee of Savin, was terminated by the company, and allegedly did not receive all that he was entitled to in the form of salary, sick pay, bonuses, and perhaps disability payments. However, there is no evidence of payment of any filing fee [10] or any other deductible expense in connection therewith. d. Genisco. Petitioner's 1989 tax return contains an attachment which states that petitioner received a nontaxable lump sum payment of $ 11,000 from Genisco during 1989. Apparently, respondent does not dispute *671 the nontaxability of the payment. As the payment is not taxable, petitioner would not be entitled to deduct the legal fees incurred with respect to this lawsuit. Sec. 265(a)(1). Therefore, based on this record, we sustain respondent on this issue. 5. Home Office Expense
Petitioner claimed $ 4,447 as home office expense on his Schedule A. Petitioner contends that he is entitled to a home office deduction because he regularly used the home office in investment activities. Respondent disallowed the amount claimed in the notice of deficiency. Section 280A(a), in general, denies deductions with respect to the use of a dwelling unit that is used by the taxpayer during the taxable year as a residence. However, section 280A(c) permits the deduction of expenses allocable to a portion of the dwelling unit that is exclusively used on a regular basis as "the principal place of business for any trade or business of the taxpayer". Thus, to qualify under section 280A(c) for a home office deduction, petitioner must establish that a portion of his dwelling is (1) exclusively used, (2) on a regular basis, and (3) as the principal place of business for his trade or business. Hamacher v. Commissioner, 94 T.C. 348 (1990). *672 Thus, if a taxpayer's home-office expenses are not incurred in carrying on a trade or business pursuant to section 162, they are not deductible. Neither the Internal Revenue Code nor the regulations define "trade or business" for this purpose. However, the concept of engaging in a trade or business, as distinguished from other activities pursued for profit, has been in the Internal Revenue Code since its inception and has generated much case law. In determining whether a taxpayer who manages his own investments is engaged in a trade or business, the courts have distinguished between "traders," who are considered to be engaged in a trade or business, and "investors," who are not. A securities trader derives his profits primarily from frequent exchanges of his own securities, which are designed to take advantage of very short-term swings in the market, usually day trades. Moller v. United States, 721 F.2d 810, 813 (Fed. Cir. 1983); King v. Commissioner, 89 T.C. 445, 458 (1987). Whereas, an investor, on the other hand, generally profits through interest, dividend yields, and the capital appreciation of securities. *673 Unlike a securities trader, an investor will not ordinarily be concerned with the short-term developments that would influence prices on the daily securities market. Moller v. Commissioner, supra at 813; Purvis v. Commissioner, 530 F.2d 1332, 1334 (9th Cir. 1976), affg. T.C. Memo. 1974-164. Moreover, no matter how extensive his activities might be, an investor is never considered to be engaged in a trade or business with respect to his investment activities. Higgins v. Commissioner, 312 U.S. 212, 216-218 (1941). Petitioner has failed to provide any evidence that he was a trader and not an investor. Rather, petitioner's investment income consisted primarily of interest and dividends. Based on this record, with respect to petitioner's investment activities, we conclude that petitioner was an investor, and, therefore, not engaged in a trade or business under section 162. Accordingly, petitioner is not entitled to a home office deduction. Section 6662(a)
Section 6662(a) and (b)(1) imposes a penalty on any portion of an underpayment that is attributable to negligence or disregard *674 of rules and regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with the statute, and the term "disregard" includes any careless, reckless or intentional disregard. Petitioner has the burden of proof on this issue. Rule 142(a). It is clear from the evidence presented that petitioner was negligent in not maintaining records and claiming deductions the disallowance of which has been sustained. Accordingly, we sustain respondent on this issue. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. On brief, petitioner raised the issue as to whether he is entitled to offset any taxable income ultimately determined for 1989 by loss carrybacks from subsequent years. It is well established that we will not consider any issue raised for the first time after trial in a party's brief. Moreover, other than petitioner's allegations, there are no facts in the record to support any finding of losses incurred in subsequent years.↩
3. Respondent also determined unreported income entitled "Disability Compensation-CA" in the amount of $ 1,248, which has been conceded by respondent.↩
4. We are not required to determine whether the capital gain is long-term or short-term for purposes of this case.↩
5. In Von Kalb v. Commissioner, T.C. Memo. 1978-366, after reviewing the extensive medical testimony and supporting evidence regarding food expenditures, we allowed 30 percent of the taxpayer's total grocery expenditures as a medical deduction in connection with the taxpayer's hypoglycemic condition. Petitioner relies upon Von Kalb↩ as legal authority to deduct 30 percent of his food expenditures plus an additional 10 percent for his allergy to monodyglycerides.
6. We note that in Von Kalb v. Commissioner, supra↩, the restaurant bills (unlike the grocery costs) were disallowed in full.
7. For purposes of this opinion, we assume that petitioner did not abandon the trade or business of accounting, although unemployed since 1987.↩
8. The parking receipts generally did not contain a date, address, or name of potential employer.↩
9. Sec. 1.162-5(a), Income Tax Regs., provides as follows: Sec. 1.162-5. Expenses for education. -- (a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education -- (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation.↩
10. The record contains a receipt for a filing fee of $ 96, but that receipt is from the Los Angeles County Clerk of the Superior Court and is undated, unless "91/08/05" means August 5, 1991.↩